

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-6-2008

# USA v. Atrium I Nursing

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4649

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Atrium I Nursing" (2008). *2008 Decisions.* Paper 1048.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1048

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4648/4649
_____

UNITED STATES OF AMERICA

v.

MARTHA BELL,
                    Appellant in No. 06-4648

ATRIUM I NURSING AND REHABILITATION CENTER,
                    Appellant in No. 06-4649.

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 04-cr-0212)
District Judge: Honorable Terrence F. McVerry

_____

Submitted Under Third Circuit LAR 34.1(a)
June 3, 2008

Before:   FISHER, JORDAN, *Circuit Judges*,
          and YOHN*, *District Judge*.

Filed June 6, 2008
_____

OPINION OF THE COURT
_____

_____

     *Honorable William H. Yohn, Jr., Senior Judge, United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

JORDAN, *Circuit Judge*.

Martha Bell appeals from the October 31, 2006 judgment of conviction entered by the United States District Court for the Western District of Pennsylvania, after a jury found her guilty of health care fraud, in violation of 18 U.S.C. § 1347, and making false statements relating to health care matters, in violation of 18 U.S.C. § 1035(a)(2). We will affirm.

## I.     Background

On August 24, 2004, an eleven count indictment was filed against Atrium I Nursing and Rehabilitation Center ("Atrium") and its operator, Bell, charging them with one count of health care fraud (Count 1) and ten counts of false statements relating to health care matters (Counts 2 through 11). *United States v. Bell*, No. 04-212, 2006 WL 952214, at *1 (W.D. Pa. Apr. 12, 2006) ("*Bell I*"). A jury trial began on July 19, 2005, and on August 24, 2005, the jury "rendered a unanimous verdict as to each defendant." *Id.* Bell was found guilty on Counts 1-6, 8, 10, and 11, and Atrium was found guilty on all counts. *Id.* On November 18, 2005, the District Court denied Atrium's and Bell's motions for judgment of acquittal, and, on April 12, 2006, denied their motions for reconsideration of the November 18th decision. *Id.* at *2. On May 16, 2006, the Court denied Atrium's and Bell's motions for a new trial based on the government's alleged violations of *Brady v. Maryland*, 373 U.S. 83 (1963). *U.S. v. Bell*, No. 04-212, 2006 WL 1330200, at *1 (W.D. Pa. May 16, 2006) ("*Bell II*").

On October 27, 2006, Atrium was sentenced to five years probation and a fine of $490,000. Bell was sentenced to sixty months of incarceration followed by a term of supervised release of three years and a fine of $50,000. The Court entered the judgments of conviction and sentence on October 31, 2006. This appeal followed.[1]

## II. Discussion[2]

Bell argues that there was insufficient evidence presented at trial to convict her of health care fraud. She also challenges the sufficiency of the evidence as to her conviction for making false statements relating to health care matters as set forth in Count 3 of the indictment. Finally, Bell argues that the District Court erred in failing to grant her motion for a new trial based on the government's alleged failure to comply with its disclosure obligations under *Brady*.

---

[1]Atrium was dissolved by a December 26, 2007 Order of the Court of Common Pleas of Allegheny County, Pennsylvania. On January 9, 2008, that Court appointed Robert B. Stein, Esquire, as Atrium's receiver. Atrium had filed an appeal but, by letter dated May 9, 2008, Mr. Stein stated on Atrium's behalf that, "the appeal in [this case] is to be withdrawn." We therefore treat Atrium's appeal as abandoned and address only Bell's arguments.

[2]The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review challenges to the sufficiency of the evidence "in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hodge*, 321 F.3d 429, 439 (3d Cir. 2003) (citation omitted). When a motion for a new trial is based on a *Brady* claim, which "presents questions of law as well as questions of fact, we will conduct a *de novo* review of the district court's conclusions of law as well as a clearly erroneous review of any findings of fact." *United States v. Pelullo*, 399 F.3d 197, 202 (3d Cir. 2005) (internal quotation marks and citations omitted).

*A. Count 1*

Bell first challenges the sufficiency of the evidence as to her conviction for health care fraud (Count 1 of the indictment). She argues that the government failed to demonstrate the "execution of a scheme or artifice to defraud" as required by 18 U.S.C. § 1347.[3] Bell says the evidence demonstrates only that she "violated general administrative regulations," but that it does not establish criminal conduct. (Appellant's Brief at 38.)

We disagree. Viewing the evidence in the light most favorable to the government, the record amply supports that Bell knowingly engaged in a scheme with the specific intent to defraud Medicare and Medicaid in connection with both the delivery of and payment for health care benefits, items, and services. For example, Bell directed Atrium's employees to falsify records so that they did not accurately reflect the deplorable conditions at Atrium.[4] The falsified records were then provided to the Pennsylvania

---

[3]The statute provides:
> Whoever knowingly and willfully executes, or attempts to execute, a
> scheme or artifice -
> (1) to defraud any health care benefit program; or
> (2) to obtain, by means of false or fraudulent pretenses, representations, or
> promises, any of the money or property owned by, or under the custody or
> control of, any health care benefit program,

in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both. ...
18 U.S.C. § 1347.

[4]A detailed recounting of the depredations Bell inflicted on Atrium residents is unnecessary. Suffice it to say that the accounts are genuinely heartbreaking – accounts of helpless, elderly and infirm residents left to lie in their own waste, one with an empty oxygen canister, another with undissolved medication in her mouth for hours, another with bruises and open sores, and so on and on, all being left with no protection from the

Department of Health ("DOH") for the specific purpose of deceiving it into believing that Atrium complied with applicable regulations, so that Atrium would maintain its certification under Medicare and Medicaid and, hence, the flow of government money. Bell was properly found guilty of health care fraud "based upon a scheme to falsify records" that she used "in an attempt to conceal from state and federal regulatory agencies the substandard care which was being provided to residents at Atrium." *Bell I*, 2006 WL 952214 at *2. Sufficient evidence supports Bell's conviction on Count 1 of the indictment.

### B.  Count 3

Bell also argues that there was insufficient evidence presented at trial to convict her of Count 3 of the indictment. Count 3 charged Bell with making false statements in connection with Mabel Taylor's death while she was a resident at Atrium, in violation of 18 U.S.C. § 1035(a)(2).[5]

---

violent outbursts of other senile and understandably frustrated residents, and this while Bell lined her pockets and left vendors unpaid. The temporary administrator who took over management of the facility from Bell indicated that, though he had taken over other problem facilities in the past, he had never seen anything like the conditions he encountered at Atrium. (Appendix at 2905.)

[5]The statute provides:

(a) Whoever, in any matter involving a health care benefit program, knowingly and willfully...

(2) makes any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, in connection with the delivery of or payment for health care benefits, items or services, shall be fined under this title or imprisoned

On the evening of October 25, 2001, Taylor wandered into Atrium's courtyard and could not get back into the building because the doors were malfunctioning. She was found dead in the courtyard at 4:00 a.m. on October 26, 2001. On October 29, 2001, Bell asked Harold Whipkey, an Atrium employee, to prepare a written statement that he saw Taylor inside on the night that she died. Whipkey complied and prepared two statements to that effect. However, Bell knew full well that Whipkey's statements were false and that he was actually at a bar on the evening that Taylor died.

Bell argues that Whipkey's false statements did not "involv[e] a health care benefit program" because they were made "in relationship to the police investigation and had nothing to do with health care or a health care benefit program." (Appellant's Brief at 49.) However, Whipkey's false statements were provided to the DOH in connection with its abuse investigation after Taylor's death, thereby implicating Atrium's receipt of Medicare and Medicaid funding. Further, Atrium was a qualifying "health care benefit program" because it was receiving funds under Medicare and Medicaid, and Whipkey's false statements obviously related to care given – or not given – by Atrium. As the

_____

not more than 5 years, or both.
(b) As used in this section, the term "health care benefit program" has the meaning given such term in section 24(b) of this title.
18 U.S.C. § 1035(a)(2).

The term "health care benefit program" is defined as "any public or private plan or contract, affecting commerce, under which any medical benefit, item or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." 18 U.S.C. § 24(b).

government points out, the "false statements at issue concerned health care services that had been provided to Ms. Taylor at Atrium on the night of her death. Thus, the false statements were in fact made in connection with the delivery of health care services, as is required to sustain a conviction under § 1035(a)(2)." (Appellee's Brief at 53.) Viewing the evidence in the light most favorable to the government, it is clear that there is sufficient evidence to sustain Bell's conviction on Count 3 of the indictment.

### C. Alleged Brady Violations

As for the *Brady* violations that Bell alleges, she makes essentially the same arguments on appeal as she did to the District Court in support of her motion for a new trial. She argues that the government withheld correspondence with United States Senator Rick Santorum that she herself authored and received on Atrium's behalf. She also contends that certain out-of-court statements by two government witnesses were not disclosed prior to trial.

In denying Bell's motion for a new trial, the District Court applied the appropriate legal standard, which it summarized as follows:

> [To] establish a *Brady* due process violation, a defendant must show that (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defendant; and, (3) the suppressed evidence was either material to guilt or to punishment. ... However, the government is not obliged under *Brady* to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself.

7

*Bell II*, 2006 WL 1330200 at *2 (citations and internal quotation marks omitted). The Court then "f[ound] and rule[d] that the correspondence which ... Bell sent to and received from Senator Santorum is simply not *Brady* material" because "Bell was the sender and receiver of both of these letters[,]" and "there is no indication or allegation that these letters were either sent to or in the possession of the government ... ." *Id.* The Court concluded that Bell thus "failed to establish that" the correspondence between herself and Senator Santorum was "suppressed within the meaning of *Brady*," and she, "therefore, failed to establish a *Brady* violation." *Id.* There is no error of fact or law in that conclusion.

The District Court also "f[ound] and rule[d] that [Bell] failed to establish that the alleged statements of [the government witnesses] were suppressed within the meaning of *Brady*" because there was no "evidence to support [Bell's] claim that the government had possession, either actual or constructive, of [those] statements ... and failed to provide same to [Bell]. Accordingly, [Bell has] failed to establish a *Brady* violation." *Id.* at *3. Again, the District Court did not err as a matter of fact or law in reaching that conclusion.

III. **Conclusion**

For the foregoing reasons, Bell's judgment of conviction will be affirmed.